UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BERNARD B. IDLISAN,

                Plaintiff,

       - against -                      **OPINION AND ORDER**
                                      13-CV-2345 (SJF)(GRB)
NORTH SHORE-LONG ISLAND JEWISH
HEALTH SYSTEMS, INC.,

                Defendant.
----------------------------------------------------------X
FEUERSTEIN, J.

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y
★ MAY 23 2014 ★
LONG ISLAND OFFICE

On April 9, 2013, plaintiff Bernard B. Idlisan ("plaintiff") commenced this employment discrimination action against defendant North Shore-Long Island Jewish Health Systems, Inc. ("defendant"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112, *et seq.* Pending before the Court is defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. For the reasons set forth below, the motion is granted.

I.    Background

    A.    Factual Background

Plaintiff lists the facts of his case as follows:

> "1) I am disabled under the [ADA].
>
> 2) I was diagnosed with severe triple vessel heart disease as shown on Exhibits A, B, C and D. Defendant was aware of my disability as shown on Exhibit 13.

1

> 4) [sic] I am Asian by Race with Philippines as my National Origin.
>
> 5) The fact about my Race was made known to Defendant based on the cover letters I submitted online as well as page 7 of Application Form.
>
> 6) Defendant was aware about my National Origin based on my resume [sic].
>
> 7) As confirmed by Defendant on Exhibit 17, I met the position requirements of the 5 out of the 6 positions I applied for online."

(Complaint ["Compl."], ¶ 8). Plaintiff seeks "[e]mployment consideration OR compensatory damages of FIFTY THOUSAND ($50,000.00) [sic] if Defendant refuses to hire [him] * * * for causing [him] some form of anxiety, depression, and mental anguish." (Compl. at 5).

Plaintiff attached twenty-eight (28) exhibits to his complaint. Exhibit 1 consists of a cover letter from plaintiff to the Human Resources Department at "Lenox Hill Hospital" ("Lenox Hill"), dated January 22, 2012; part of defendant's job posting for "Admitting Clerk-SOU0002TA" ("the admitting clerk position"); and an email from defendant's Talent Acquisition Department ("TAD") to the email address designated by plaintiff in his cover letter, dated Monday, January 23, 2012 at 9:06 a.m., acknowledging receipt of his application for the admitting clerk position. In his cover letter, plaintiff indicated, in relevant part:

> "I'm writing in response to an ad posted on your website for an **Admitting Clerk** position under **Requisition ID#SOU0002TA.** I'm applying for this vacancy through **Section 55-a** of the New York State Civil Service Law. As a disabled person diagnosed with severe triple vessel heart disease, I'm qualified to apply in civil service positions on a non-competitive basis pursuant to Section 55-a."

(Compl., Ex. 1) (emphasis in original).

Exhibit 2 consists of a cover letter from plaintiff to the Human Resources Department at Lenox Hill, dated January 23, 2012, and an email from defendant's TAD to the email address designated by plaintiff in his cover letter, dated Monday, January 23, 2012 at 8:34 a.m., acknowledging receipt of his application for "A/R Representative I-NSH00024J at North-Shore-LIJ Health System" ("the A/R representative position"). In his cover letter, plaintiff indicated, in relevant part:

> "I'm writing in response to an ad posted on your website for an **A/R Representative** position under **Requisition ID#NSH00024J.** I'm applying for this vacancy through **Section 55-a** of the New York State Civil Service Law. As a disabled person diagnosed with severe triple vessel heart disease, I'm qualified to apply in civil service positions on a non-competitive basis pursuant to Section 55-a."

(Compl., Ex. 2) (emphasis in original).

Exhibit 3 consists of a cover letter from plaintiff to the Human Resources Department at "Lenox Hill Hospital/North Shore-LIJ," dated March 15, 2012; part of defendant's job posting for an "AR Clerk-Hospital" at Lenox Hill, "Requisition ID: NSH00026O" ("the AR clerk position"); and an email from defendant's TAD to the email address designated by plaintiff in his cover letter, dated Thursday, March 15, 2012 at 4:53 p.m., acknowledging receipt of his application for the AR clerk position. In his cover letter, plaintiff indicated, in relevant part:

> "I'm writing in response to your recent advertisement posted on your website for an AR Clerk position under Requisition ID No. NSH000260. I'm applying for this vacancy through Section 55-a of the New York State Civil Service Law."

(Compl., Ex. 3).

Exhibits 4 and 5 are copies of emails from defendant's TAD to plaintiff's email address,

3

both dated March 15, 2012, at 5:45 p.m. and 6:26 p.m., respectively, acknowledging receipt of his applications for positions as "Clerk-NSL000142 at North Shore-LIJ Health System" ("the clerk-142 position") and "Clerk-NSL00013W at North Shore-LIJ Health System" ("the clerk-13W position"), respectively.

Exhibit 6 consists of a cover letter from plaintiff to defendant's Human Resources, dated March 18, 2012, and an email from defendant's TAD to the email address designated by plaintiff in his cover letter, dated Sunday, March 18, 2012 at 5:31 a.m., acknowledging receipt of his application for the position of "Practice Filing Associate-Surgery-Oncology-NS 00000E at North-Shore-LIJ Health System" ("the practice filing associate position"). In his cover letter, plaintiff indicated, in relevant part:

> "I'm writing in response to your recent advertisement posted on your website for a Practice Filing Associate- Surgery/Oncology position under Requisition ID No. NS00000E. I'm applying for this job through Section 55-a of the New York State Civil Service Law."

(Compl., Ex. 6) (emphasis in original).

Exhibit 7 consists of pages 3-4 and 7-8 of plaintiff's discrimination complaint, dated July 24, 2012, filed with the New York State Division of Human Rights ("NYSDHR") on August 6, 2012, alleging that defendant discriminated against him based upon his disability, race and national origin. Exhibit 8 consists of: (1) a letter from the NYSDHR to plaintiff, dated August 7, 2012, acknowledging receipt of his complaint and advising him that a copy of the complaint and determination thereupon "will be sent to the U.S. Equal Employment Opportunity Commission (EEOC), so that [his] complaint may be dual-filed under applicable federal law;" and (2) the first page of plaintiff's NYSDHR complaint.

4

Exhibit 9 is a letter from Colleen McMahon ("McMahon"), defendant's senior associate general counsel, to the NYSDHR, dated September 24, 2012, containing defendant's "Position Statement denying all allegations of discrimination by [plaintiff]" ("defendant's position statement"), attached to which is a copy of defendant's "Recruitment and Hiring" policy ("R&H policy") applicable "to [TAD] staff and/or hiring department heads/designees," contained in its "Human Resources Policy and Procedure Manual."[1]

---

[1] In defendant's position statement, McMahon indicates that defendant "is an integrated academic health system comprised of sixteen member hospitals [including Lenox Hill Hospital] * * *, hospice and homecare services, a major medical research institute, and many other health-related facilities." (Compl., Ex. 9 at 2). According to McMahon, "[t]he application and hiring process begins at a centralized website, nslijcareers.com[;]" all "[a]pplications must be submitted electronically[;]" "[e]very individual interested in applying for one or more jobs first must use the website to create an electronic profile, submit a resume [sic] electronically, and then electronically apply for specific positions as they are posted on the website for one or more days[;]" and the consideration process begins once the posting period expires and the positions are removed from the website. (Compl., Ex. 9 at 3).

According to McMahon, defendant's TAD abides by the following protocol in hiring new employees:

> "Applicants who currently work for [defendant] are considered to be 'internal' candidates, who get first preference. If there are no internal candidates who are deemed to be qualified and acceptable, then and only then are external applicants considered. The applications of the external applicants who meet all of the minimum job qualifications are considered, in groups of ten and in the order in which their applications were received electronically. If there are no acceptable applicants in the first group of ten, the next ten applications are considered. This protocol is followed until a qualified candidate is identified, interviewed, and hired. Given the vast number of applicants applying for each position with [defendant], the majority of applicants are never interviewed.
> * * *"

(Compl., Ex. 9 at 3).

Although both parties rely upon the information in defendant's position statement in

Exhibit 10 is a letter from the NYSDHR to plaintiff, dated September 28, 2012, providing him with a copy of defendant's position statement and advising him that he must submit any written rebuttal thereto to the NYSDHR by October 15, 2012.

Exhibit 11 is a copy of the NYSDHR's determination and order after investigation of plaintiff's discrimination complaint against defendant, dated February 1, 2013.[2]

Exhibit 12 is a copy of the EEOC's "Dismissal and Notice of Rights," dated March 22, 2013, adopting the findings of the NYSDHR.

Exhibit 13 is a copy of the "Summary" section of one of defendant's online application forms completed by plaintiff. Under "Basic Profile Information," plaintiff indicated, *inter alia*, that he was seeking an entry level job with defendant and that his education level is "High School Diploma/GED ($\pm$ 11 years)Associate's Degree/College Diploma ($\pm$ 13 years)."[3] (Compl., Ex. 13 at 2). Plaintiff responded affirmatively to the question: "Have you ever been convicted of or plead [sic] guilty to a crime(s), (misdemeanor or felony)? Disclosure of a criminal record will not

---

support of their respective contentions, such information is not relevant to the Court's decision in this case and is set forth solely for the sake of completeness.

[2] The NYSDHR found, *inter alia*, "no probable cause to believe that [defendant] has engaged in or is engaging in the unlawful discriminatory practice complained of," (emphasis omitted), and that defendant "provided a nondiscriminatory reason for not hiring [plaintiff] in that each position that [he] applied for was awarded to an applicant who submitted his or her application before [plaintiff] submitted his." (Compl., Ex. 10). Since both parties refer to the NYSDHR's determination, it is included here for the sake of completeness, although it is not relevant to the Court's decision in this case.

[3] Elsewhere in the application form, plaintiff indicated, *inter alia*, that he received his GED from the University of Upstate New York in Albany in November 2008; that he graduated from "Claret High School of Zamboanga" in Zamboanga del Sur in "Mar, 1973;" and that he received an "Associate's Degree/College Diploma ($\pm$ 13 years)" in "accountancy" from "Zamboanga A.E. Colleges" in Zamboanga del Sur in "Mar, 1978," although he responded "No" to the question: "Did you graduate?" (Compl., Ex. 13 at 3-4).

automatically disqualify you from employment consideration[.]" (id. at 3), and provided the following details:

> "1) Grand Larceny, 2nd degree. I was convicted on December 18, 2007 at Queens County, New York, with an indeterminate term of 2-6 years. I was released on Parole supervision on May 19, 2009 after serving two years in prison. On May 19, 2011, I was granted full discharge from parole supervision due to good conduct. 2) Bail Jumping, 2nd degree. I was convicted on November 13, 2007 with a definite term [of imprisonment] of six (6) months. I was released on parole supervision on May 19, 2007."

(Id.; and Ex. 16).

In the "Work Experience" section of the application form, plaintiff indicated, *inter alia*, that he has been employed as an information clerk for the Board of Elections since "Aug, 2010;" that defendant may not contact his supervisor; and that he did not know his supervisor's name or title because he "just serve[s] during elections." (Compl., Ex. 13 at 5). Plaintiff further indicated that he was employed: (1) as a front desk clerk at the Fort Greene Action Center from May 2010 to August 2010; (2) as a data conversion operator in the United States Postal Service from July 2001 to September 2001, although he had "no recollection" of his supervisor's name or title; (3) as a "Full Charge Bookkeeper" at Jamaica Furniture from September 1994 to July 2001, although his supervisor could not be contacted by defendant because the "company closed[;]" and (4) as a "Records Officer" at the Philippine Children's Medical Center from March 1986 to June 1994. (Id. at 5-7).

Under the "EEO Information" section of the application form, plaintiff indicated, *inter alia*, that he is an Asian male who considers himself to be "an individual with a disability." (Compl., Ex. 13 at 7, and Ex. 15).

Exhibit 14 is a copy of plaintiff's résumé containing the work history set forth above. Under the heading "Education," plaintiff indicates that he received a "Bachelor of Science in Commerce-Accounting major" from the Zamboanga A.E. Colleges, Zamboanga City, Philippines. (Compl., Ex. 14).

Exhibit 17 is a copy of the NYSDHR's Investigative Report regarding plaintiff's complaint[4] and Exhibit 18 is a "Comparative Analysis" created by plaintiff to question the reliability of the NYSDHR's Investigative Report.

Plaintiff designates Exhibit 19 as a "Summary of Completed submission of online Application [sic] showing Job Posting Dates." (Emphasis omitted). (Compl. at 8).

Plaintiff designates each of Exhibits 20 through 25 as an "* * * Esigned [sic] document showing actual Date of online application" for the positions of admitting clerk, A/R representative, AR clerk hospital, clerk-13W and clerk-142, respectively. However, in each of

---

[4] The NYSDHR's Investigative Report indicates, *inter alia*: (a) that plaintiff met the qualifications for five (5) of the six (6) positions for which he applied, with the exception being the AR clerk position; (b) that plaintiff "was not considered an applicant [for the admitting clerk position] due to the number in which he came in the candidate pool," i.e., two hundred ninety-third (293rd) out of a total of three hundred fifty-six (356) applications received by defendant for that position; (c) that plaintiff's application was the two hundred first (201st) out of a total of two hundred twenty-eight (228) applications received by defendant for the A/R representative position; (d) that plaintiff's application was the one hundred forty-fifth (145th) out of a total of two hundred four (204) applications received by defendant for the clerk-13W position; (e) that plaintiff's application was the one hundred fifty-eighth (158th) out of a total of two hundred twenty-four (224) applications, including thirteen (13) internal candidate applications, received by defendant for the clerk-142 position; (f) that an internal candidate employed by defendant since January 4, 2010 was hired for the clerk-142 position; (g) that plaintiff's application was the three hundred forty-seventh (347th) out of a total of four hundred ninety-seven (497) applications received by defendant for the practice filing associate position; and (h) that defendant received the applications of the individuals ultimately hired for all six (6) of the positions before receiving plaintiff's applications for those respective positions. Since both parties rely upon this information in support of their respective contentions, it is included for the sake of completeness, but is not relevant to the Court's determination herein.

the exhibits, both the position for which plaintiff was applying and the date of the application are redacted from the document, although Exhibit 22 refers to "Number:NSH000260," which was the identification number for the AR clerk position; Exhibit 23 refers to "Job Number: NSL00013W," which was the identification number for the clerk-13W position; Exhibit 24 refers to "Job Number NSL000142," which was the identification number for the clerk-142 position; and Exhibit 25 refers to "Job Number: NS 00000E," which was the identification number for the practice filing associate position. (Compl., Exs. 20-25).

Exhibit 26 is a Certificate of Good Conduct from the New York State Department of Corrections and Community Supervision ("NYSDOCCS"), dated December 5, 2012, indicating: (a) that on November 13, 2007, plaintiff was sentenced in the Supreme Court of the State of New York, County of Queens ("the state court"), to a determinate term of imprisonment of six (6) months upon his conviction for bail jumping in the second degree; (b) that on December 18, 2007, plaintiff was sentenced in the state court to an indeterminate term of imprisonment of two (2) to six (6) years upon his conviction for grand larceny in the second degree; and (c) that plaintiff "has maintained a record of good conduct since 5/19/09 and is a fit person to receive this [Certificate of Good Conduct]." (Compl., Ex. 26).

Exhibit 27 is a Certificate of Final Discharge from the NYSDOCCS, dated May 19, 2011, indicating that plaintiff was "discharged from further jurisdiction of the Board of Parole[.]"

Exhibit 28 is a Certificate of Disability and Job Readiness ("Certificate of Disability"), dated March 25, 2012, signed by Dr. Michael L. Avaricio, a cardiologist at Advanced Cardiac Care, PLLC, indicating that plaintiff "is an individual with a physical disability (severe triple vessel heart disease) that qualifies him for an employment consideration pursuant to **Section 55-a**

9

and **Section 55-b/c** of the New York State Civil Service Law[] * * * [and] is also job ready and is likely to succeed in performing the duties of an **Accounting Clerk** or any **clerical position** that he is applying for in an office environment setting," (emphasis in original), to which certain medical records are attached as exhibits. The medical records attached to the Certificate of Disability consist of: (a) two (2) Cardiac Catheterization Reports indicating, *inter alia*, (i) that on August 31, 2010, Dr. Ahmad K. Aslam performed a cardiac catheterization upon plaintiff at Beth Israel Heart Institute based upon indications of unstable angina and a positive stress test, (Compl., Ex. 28, Exs. A and B), and (ii) that the catheterization revealed, *inter alia*, three (3) vessel disease, i.e., moderate diffuse disease in plaintiff's left main coronary and left circumflex arteries and severe diffuse disease in plaintiff's left anterior descending artery, and normal left ventricular systolic function, (id.); (b) a "Treating Physician's Wellness Plan Report" ("TPWP Report"), dated December 13, 2010, completed by Dr. Avaricio "to assist [the New York City Human Resources Administration ("NYCHRA")] to determine [plaintiff's] functional capacity and ability to participate in work-related activities at the completion of the [NYCHRA's wellness plan ("WP")],"[5] (Compl., Ex. 28, Ex. C at 1), indicating, *inter alia*, (i) that plaintiff was diagnosed with hypercholesterolemia, hypertension and coronary artery disease, i.e., severe triple vessel disease, on August 31, 2010, (ii) that a coronary angiogram revealed severe coronary artery disease, (iii) that plaintiff was prescribed several medications to take on a daily basis to treat his conditions, (iv) that plaintiff "will require revascularization[,] either angioplasty or

---

[5] According to the TPWP Report, "[p]articipants in [NYC]HRA's pubic assistance program, who have been assessed to have unstable or untrea[ed] medical and/or mental health conditions affecting functional capacity and requiring treatment, are placed in a wellness plan (WP)." (Compl., Ex. 28, Ex. C at 1).

10

preferred [coronary] bypass [surgery]," (Compl., Ex. 28, Ex. C at 2), and (v) that plaintiff is "[u]nable to work for at least 12 months[,]" (id.); and (c) a note from Dr. Avaricio, dated October 19, 2010, indicating (i) that plaintiff is a patient of his "with severe heart condition, coronary disease at high risk for cardiac arrest * * * [and] requires open heart surgery (bypass)[,]" (Compl., Ex. 28, Ex. D), and (ii) that he recommended "[b]edrest and avoidance of work or physical activity[,]" (id.).

B. Procedural Background

On April 9, 2013, plaintiff commenced this employment discrimination action against defendant pursuant to, *inter alia*, Title VII and the ADA, alleging that defendant failed to hire him based upon his race, which he designates as Asian; national origin, which he designates as "Philippines;" and disability, which he designates as "severe triple vessel heart disease." (Compl., ¶ 7).[6]

Defendant now moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. In his opposition, plaintiff

---

[6] Plaintiff has brought at least five (5) other similar employment discrimination cases in federal courts in this Circuit since 2012. See Idlisan v. New York City Health and Hospitals Corp. ("Idlisan I"), No. 12 Civ. 9163, 2013 WL 6049076, at * 1 n. 1 (S.D.N.Y. Nov. 15, 2013) (alleging discrimination under the ADA for failure to hire him for twelve (12) clerical associate positions); Idlisan v. Cornell Univ. Weill Med. Coll., No. 13 Civ. 1556 (S.D.N.Y. filed Mar. 5, 2013) (alleging, *inter alia*, discrimination under Title VII and the ADA for failure to hire him for five (5) positions); Idlisan v. Mount Sinai Med. Ctr., No. 12 Civ. 8935 (S.D.N.Y. filed Dec. 6, 2012) (alleging, *inter alia*, discrimination under Title VII and the ADA for failure to hire him for eight (8) positions); Idlisan v. N.Y.S. Dep't of Taxation & Fin. ("Idlisan III"), No. 12 Civ. 1787 (N.D.N.Y. filed Dec. 5, 2012) (alleging discrimination under the ADA for failure to hire him for five (5) positions); Idlisan v. SUNY Upstate Med. Univ. ("Idlisan II"), No. 5:12-cv-1790 (N.D.N.Y. filed December 5, 2012) (alleging, *inter alia*, discrimination under Title VII for failure to hire him for thirty-four (34) positions).

challenges defendant's position statement, (Compl., Ex. 9), and the reliability of the NYSDHR's Investigative Report, (Compl., Ex. 17), (see Plf. Opp. at 5-9), and otherwise contends: (1) that "[a]ll of [his] applications submitted online were just ignored [by defendant] without any valid justification," (Plf. Opp. at 3); (2) that defendant's inclusion of questions about his race, ethnicity, gender and disability in the "EEO Information" subsection of the "Summary" section of its online application form, (see Compl., Ex. 13 at 7), without a clear statement, *inter alia*, "that the information is being requested on a voluntary basis, that it will be kept confidential in accordance with the ADA, that refusal to provide it will not subject the applicant to any adverse treatment, and that it will be used only in accordance with the ADA," (Plf. Opp. at 11 and 12), "is an indiction that the information * * * was used by Defendant in its decision-making not to hire [him] due to [his] disability * * * Race(Asian) and National Origin (Philippines)," (Id.); (3) that "[t]here is a misconception that people originated from Asia as a whole, and Philippines in particular, are not well-versed in English because of poor education upbringing[,]" which he "believe[s] * * * could have been one of the reasons why I was denied employment by Defendant[,]" (Plf. Opp. at 12); and (4) that "the admissible evidence articulated by Defendant as legitimate, nondiscriminatory reasons for not hiring [him] * * * are just *pretexts* to hide discrimination," (Plf. Opp. at 14) (emphasis in original).

II. Discussion

    A. Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is

12

plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937.

District courts are required to read *pro se* complaints liberally, Erickson, 551 U.S. at 94, 127 S.Ct. 2197 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013), and to construe them "'to raise the strongest arguments that they suggest." Warren v. Colvin, 744 F.3d 841, 843 (2d Cir. 2014). Moreover, in deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P., 737 F.3d 166,

176 (2d Cir. 2013); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 129 S.Ct. at 1949; see also Wilson v. Dantas, 746 F.3d 530, 535 (2d Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. 662, 129 S. Ct. at 1950; see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (quotations and citations omitted)). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations and citation omitted)).

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013).

14

B.  Discrimination Claims

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer– (1) to fail or refuse to hire * * * any individual * * * because of such individual's race, color, religion, sex or national origin * * *." 42 U.S.C. § 2000e-2(a). The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to * * * the hiring * * * of employees * * *." 42 U.S.C. § 12112(a).

"The *sine qua non* of a * * * discriminatory action claim under Title VII [or the ADA] is that the discrimination must be *because of* [a protected characteristic]." Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (emphasis in original) (quotations and citation omitted); see also Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (holding that in order to establish a *prima facie* disparate treatment claim, the plaintiff must show "that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination."); Idlisan I, 2013 WL 6049076, at * 4 ("As with claims brought under other employment discrimination statutes like Title VII or the ADEA, the *sine qua non* of an ADA discriminatory action claim is that the discrimination must be 'because of' the employee's protected status." (quotations and citations omitted)). Although an employment discrimination plaintiff "need not plead a prima facie case of discrimination," Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), "dismissal is nevertheless appropriate where the plaintiff failed to allege even the basic elements of a discriminatory action claim." Maldonado v. George Weston Bakeries, 441 F. App'x 808, 808-09 (2d Cir. Dec. 19, 2011) (summary order); see also De La Pena v. Metropolitan Life Ins. Co., No. 13-2852-cv, 2014 WL 308005, at * 1 (2d Cir. Jan.

29, 2014) (summary order) (holding that a dismissal of an employment discrimination claim "for failure to allege facts showing a plausible inference of discrimination is wholly consistent with Swierkiewicz"); Hedges v. Town of Madison, 456 F. App'x 22, 23 (2d Cir. Jan. 13, 2012) ("[A]t a minimum, employment discrimination claims must meed the standard of pleading set forth in Twombly and Iqbal, even if pleading a prima facie case is not required."); Patane, 508 F.3d at 112 n. 3 (affirming dismissal where the plaintiff "failed to allege even the basic elements of a discriminatory action claim."); Jackson v. NYS Dept. of Labor, 709 F. Supp. 2d 218, 229 (S.D.N.Y. 2010), appeal dismissed, 431 F. App'x 21 (2d Cir. June 15, 2011) (holding that although the plaintiff "need not allege each element of a prima facie claim to survive a motion to dismiss, * * * the facts alleged at the very least must indicate the possibility that she was discriminated against on the basis of [a protected characteristic].")

Even liberally read, the complaint fails to plead any facts linking defendant's failure to hire plaintiff to his race, national origin or disability, or supporting a reasonable inference that defendant discriminated against plaintiff because of his race, national origin or disability. See, e.g. Hedges, 456 F. App'x at 24 (summary order) (affirming dismissal, *inter alia*, of the plaintiff's ADA claim on the basis that he "ha[d] not adequately pleaded discrimination on the basis of disability" because he "alleg[ed] not a single fact in support of his claims of discriminatory treatment which might conceivably give notice of the basis of his claims to the defendants."); Berkery v. Archdiocese of Hartford, 352 F. App'x 487, 490 (2d Cir. Nov. 5, 2009) (summary order) (affirming dismissal of the plaintiff's ADA claim because the complaint presented no allegations linking the defendant's employment decision to the plaintiff's disability or supporting an inference of disability discrimination); Samuel v. Bellevue Hospital Center, 366

16

F. App'x 206, 207 (2d Cir. Feb. 17, 2010) (summary order) (affirming dismissal of the plaintiff's employment discrimination claim on the basis that he "failed to allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class.") Indeed, plaintiff does not allege, *inter alia*, the race, national origin or physical condition of any of the individuals hired by defendant for the positions for which he applied, nor any other basis upon which to support a reasonable inference that defendant's failure to hire him was motived by discriminatory animus. See, e.g. De La Pena, 2014 WL 308005, at * 1 (affirming dismissal of the plaintiff's Title VII discrimination claims, on the basis, *inter alia*, that the "plaintiff's bald assertions of discrimination– unsupported by any meaningful comments, actions, or examples of similarly-situated persons outside of plaintiff's protected class being treated differently– were implausible and insufficient to survive a motion to dismiss."); Jackson v. County of Rockland, 450 F. App'x 15, 19 (2d Cir. Nov. 23, 2011) (summary order) (finding that the plaintiff's "bald assertions of discrimination and retaliation, unsupported by any comments, actions, or examples of similarly-situated individuals outside of [his] protected class being treated differently, from which [the Court] could infer that the defendants possessed a discriminatory or retaliatory motive, are implausible and insufficient to survive a motion to dismiss.") Plaintiff's conclusory and speculative allegations that defendant failed to hire him because he is Asian, is from the Philippines and/or has severe triple vessel heart disease are "vague, devoid of any particularity[] and * * * do not come close to alleging a plausible case of employment discrimination." Idlisan I, 2013 WL 6049076, at * 5; but see Idlisan II, No. 5:12-cv-1790 (MAD/TWD), 2013 WL 5815508, at * 2 (N.D.N.Y. Oct. 29, 2013) (finding that the plaintiff's allegations that defendant did not hire him because he is Asian and

17

from the Philippines, that his national origin and race were made known to defendant because they were listed on his résumé and application history, and that "[t]here is a misconception that Asians are not properly educated and don't speak fluent English which [he] perceived as one of the reasons why [he] was not hired by Defendant for the 34 positions [he] duly applied for" provided "enough detail in his claim to survive a motion to dismiss." (first brackets in original)); Idlisan III, No. 1:12-cv-1787 (MAD/CFH), 2013 WL 2898050, at * 4 (N.D.N.Y. June 13, 2013) (accord). "They are, in fact, a paradigmatic example of an unadorned, the-defendant-unlawfully-harmed-me accusation that will not do." Idlisan I, 2013 WL 6049076 (quoting Wilson v. New York City Department of Corrections, No. 11 Civ. 9157, 2013 WL 922824, at * 4 (S.D.N.Y. Mar. 8, 2013)). Moreover, plaintiff's contention that "[t]here is a misconception that people originated from Asia as a whole, and Philippines in particular, are not well-versed in English because of poor education upbringing[,]" which he "believe[s] * * * could have been one of the reasons why I was denied employment by Defendant[,]" (Plf. Opp. at 12), is entirely speculative and unsupported by any factual basis. Plaintiff "simply fails to plead facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" Id. (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955) (alteration in original). Since the complaint fails to state a plausible discrimination claim against defendant under either Title VII or the ADA, defendant's motion seeking dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and the complaint is dismissed in its entirety with prejudice.

III. Conclusion

For the reasons set forth above, defendant's motion seeking dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and the complaint is

18

dismissed in its entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. The Clerk of the Court shall enter judgment in favor of defendant, close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this Order in accordance with Rule 5(b) of the Federal Rules of Civil Procedure and record such service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

                                        s/ Sandra J. Feuerstein

                                        SANDRA J. FEUERSTEIN
                                        United States District Judge

Dated: May 23, 2014
       Central Islip, N.Y.